## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MBLA, LLC | : | Case No. 23-30455 |
| MBMB, LLC | : | Case No. 23-30456 |
| | : | Jointly Administered Under |
| | : | Case No. 23-30455 |
| Debtors | : | |

## DISCLOSURE STATEMENT

PURSUANT TO §1125 OF THE BANKRUPTCY CODE FOR

SOLICITATION OF ACCEPTANCES OR REJECTIONS TO

DEBTORS' PLAN OF REORGANIZATION.


THIS DISCLOSURE STATEMENT IS DISSEMINATED TO THE HOLDERS

OF CLAIMS AGAINST AND INTERESTS IN THE ABOVE-NAMED

DEBTORS IN CONNECTION WITH SOLICITATION OF THE ACCEPTANCE

OR REJECTION OF THE DEBTORS' PLAN OF REORGANIZATION.

# TABLE OF CONTENTS

## Disclosure Statement

I.        INTRODUCTION . . . . . . . . . . . . . . . . . . ..................... 3

II.       EVENTS PRECEDING BANKRUPTCY FILING. . . . . . ... . 4

III.      THE CHAPTER 11 CASE. . . . . . . . . . . .................... . . . . 8

IV.       FINANCIAL INFORMATION RESPECTING THE
          DEBTORS, ALTERNATIVES TO THE PLAN,
          FEASIBILITY AND MEANS OF EFFECTING
          THE PLAN ……………………………………………10

V.        SUMMARY OF THE PLAN OF REORGANIZATION. . . .19

VI.       CONCLUSION . . . . . . . . . . . ..................….. . . . . .29

# I

## <u>INTRODUCTION</u>

MBLA, LLC (hereinafter known as "MBLA"), Case Number 23-30455 and MBMB, LLC (hereinafter known as "MBMB") Case Number 23-30456, filed voluntary petitions for reorganization pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. 9101, <u>et seq</u>. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Connecticut at New Haven on June 26, 2023, (collectively hereinafter known as the "Filing Date"). On June 30, 2023, MBLA and MBMB (hereinafter known as "Debtors") filed an *Application of the Debtors for Order Directing Joint Administration of Chapter 11 Case* (Doc 10 in MBLA and Doc 9 in MBMB), which the Court granted and entered an Order Granting Motion for Joint Administration (Doc 23 in MBLA and Doc 30 in MBMB) on July 27, 2023, (hereinafter known as the "Chapter 11 Case"). The Debtors have continued in the operation of their businesses and management of their assets since the filing date as Debtors-in-Possession.

The Debtors have filed a Plan of Reorganization (the "Plan") with the Bankruptcy Court. The Plan (a copy of which accompanies this Disclosure Statement as Exhibit "A") specifies the classes of the Debtors' creditors and the treatment of the claims and interest of such creditors. Pursuant to §1126 of the Bankruptcy Code, the Debtors are soliciting acceptances of the Plan from the classes of creditors impaired by and entitled to vote on the Plan.  The purpose of this Disclosure Statement is to provide adequate information of the kind to enable such creditors to make an informed judgment in the exercise of their right to vote on the Plan.

THE PLAN IS THE LEGALLY BINDING DOCUMENT.  THE DESCRIPTIONS OF THE PLAN IN THIS DISCLOSURE STATEMENT ARE SUMMARIES ONLY AND THE PLAN SHOULD BE READ IN ITS ENTIRETY BEFORE VOTING.  TERMS USED HEREIN

SHALL HAVE THE RESPECTIVE MEANINGS ASCRIBED TO THEM IN THE PLAN, EXCEPT WHERE OTHERWISE NOTED.

NO REPRESENTATIONS CONCERNING THE DEBTORS, THEIR BUSINESSES OR FUTURE OPERATIONS, OTHER THAN THOSE SPECIFICALLY SET FORTH HEREIN, ARE AUTHORIZED BY THE DEBTORS.

Any representations or inducements made to obtain your acceptance, which are other than or inconsistent with the information contained herein should not be relied upon by you in arriving at your decision.

The Court has determined that this Disclosure Statement contains adequate information to permit you to make an informed judgment with regard to the Plan. However, the approval by the Bankruptcy Court of this Disclosure Statement is not a determination by the Bankruptcy Court on the merits of the Plan nor upon the accuracy of the information contained herein. The Debtors have made a great effort to be accurate in all material respects but are unable to warrant or represent that all the information contained herein is without inaccuracy. The Debtors believe the contents of this Disclosure Statement to be accurate although neither the Bankruptcy Court nor any other party to the Chapter 11 Case has passed upon the accuracy of the information contained herein.

## II

## EVENTS PRECEDING BANKRUPTCY FILING

MBLA is a Connecticut Limited Liability Company organized and registered with the State of Connecticut on December 27, 2002. MBMB is a Connecticut Limited Liability Company organized and registered with the Secretary of State on December 27, 2002, MBLA and MBMB are both owned by Kenneth Hill (hereinafter known as "Hill").

MBLA, on or about May 16, 2003, purchased the property at 201 Winchester Avenue, New Haven, Connecticut ("201") for $330,000.00. The Property was originally constructed in 1900 and is located on .12 acres of land. The Property contains a building consisting of 12 units for a total building size of approximately 12,850 square feet. The Property was damaged by a fire that occurred on April 28, 2012. The Debtor has been in the process of rehabilitating the Property since the fire and when completed the property will consist of a total of 12 living units made of up of four (4) one bedroom 1 bath units, four (4) two-bedroom 2 bath units, and four (4) three-bedroom 2 bath units. The Debtor estimates that when completed it will be able to rent the one-bedroom units for $1,800.00 per month, the two-bedroom units for $2,500.00 per month and the three-bedroom units for $2,900.00 per month. The Debtor owns the Property as of the filing date and it has continually renovated the Property. MBLA previously filed a Chapter 11 proceeding on December 2, 2019, with this Court, Docket Number 19-31985. The Debtor filed a Motion to Dismiss the case after it obtained financing and the case was dismissed on March 11, 2020.

MBMB on or about May 16, 2003, purchased the property at 235 Winchester Avenue, New Haven, Connecticut ("235") for $420,000.00. The Property is located on .16 acres of land. The Property was a non-conforming, fully approved, 18-unit residential real estate building located across from 25 Science Park at Yale.  The property was damaged and only the façade remained in place. While the façade remained, Cushman & Wakefield appraised the property as a non-conforming, fully approved 18-unit residential real estate building that was estimated to be worth slightly more than $1,000,000, as is and over $3,000,000.00, when the rebuilding is completed. Subsequent to the valuation, the façade was recently demolished by the City of New Haven, allegedly due to its blight ordinance. The original structure contained lead paint and asbestos, which were ultimately abated leaving only the façade. The abatement of the lead paint

5

and asbestos, was inadequately done by Alpha Abatement, LLC, as the City of New Haven required contractor. The inadequate abatement of the lead paint and asbestos, by Alpha Abatement, LLC, resulted in the commencement of a suit, which resulted in a judgment in favor of the Debtor for over $1,000,000.00, which is now uncollectible due to the death of the member of Alpha Abatement, LLC, Israel South. and Alpha Abatements, LLC's inadequate insurance policies.

The Debtors were and are responsible for payment of real property taxes, sewer and water charges, and common utilities for 201 and 235 Winchester Avenue, New Haven, CT, (hereinafter referred to as the "Properties"). On or about March 12, 2020, the Debtors executed a Promissory Note ("Note") in favor of Harrison Vickers and Waterman, LLC ("Harrison") in the original amount of $2,700,000.00 with a maturity date of April 1, 2021. On or about March 12, 2020, as security for the Note, the Debtor executed an Open-end Mortgage Deed and Security Agreement ("Mortgage"), which was recorded on May 12, 2020, in Volume 10000 at Page 203 of the City of New Haven Land Records in favor of Harrison. The Note and Mortgage along with all other documents executed on or about March 12, 2020, or thereafter shall collectively be known as the "Loan". The Mortgage was a blanket mortgage covering the Properties of the Debtors. On or about January 6, 2022, Harrison executed an Assignment of Mortgage ("Assignment"), assigning all of its "interest" in the Mortgage to Stormfield Capital Funding 1, LLC ("Stormfield"), which Assignment was recorded on January 11, 2022 in Volume 10314 at Page 245 of the City of New Haven Land Records.[1] The Mortgage also provided for a security agreement. Harrison did file a UCC-1 Financing Statement, ("UCC-1"), which UCC-1 was

---

[1] The Assignment used appears to only assign the rights in the Mortgage and it does not contain any language indicating that there was an assignment of the Note from Harrison to Stormfield.

recorded at the Connecticut Secretary of State Office on March 17, 2020, filing Number 3360403. Upon information and belief and after a review of the Connecticut Secretary of State's records, counsel was unable to locate an assignment of the UCC-1.

Stormfield commenced a foreclosure action against the Debtor entitled *Stormfield Capital Funding I, LLC v MBLA, LLC et al.,* Docket No. NNH-CV21-6116303-S ("Foreclosure"). A Judgment of Strict Foreclosure was entered on April 10, 2023, which scheduled a Law Day for June 26, 2023, for the Debtor. On April 10, 2023, the Connecticut Superior Court found the fair market value of the Property in its current condition to be $640,000.00 and the total debt to be $4,131,187.32. 44The Fair Market Value of $640,000.00 in the Foreclosure is a combined total of the value for the Property and the property of MBMB. According to the Oath of Appraiser filed in the Foreclosure, the Property has an appraised value of $540,000.00 and the property owned by MBMB has an appraised value of $100,000.00.[2] The Debtor does not agree with the findings of the Superior Court on the current value of the Property in its current condition. In addition, the Debtor believes that the Property does have a significantly higher value when its renovations are completed, which renovations, as of now will be funded by Hill.

As part of the Loan there was a document known as a "Loan Escrow Agreement" (hereinafter "Escrow") that provided for the establishment of an escrow account for the competition of the Properties, the purpose of which was to fund the continued construction and rehabilitation of the Properties. A copy of the Escrow is attached hereto as Exhibit B.  Funds were disbursed from the Escrow for that purpose but at some point, prior to the use of the escrow, Stormfield and/or its predecessor deemed that the funds were no longer available to the Debtors for the intended purpose. In addition, since the execution of the Loan, the Debtors and Stormfield and/or its predecessor

---

[2] The City of New Haven commenced a separate foreclosure action and filed an Affidavit of Appraiser and Appraisal indicating a value of $445,000.00 for the Property.

proposed that the Debtors enter into a modification of the loan and extension of deadlines in exchange for a fifty-one (51%) interest in the Debtors. As an alternative proposal, the Creditor agreed to extend the loan, provided that the Debtors assume full responsibility for the ongoing monthly interest payments and operating expenses. During these discussions Stormfield and/or its predecessor ceased all communications with the Debtors and would no longer discuss a modification of the loan or extension of the loan terms.

Almost immediately subsequent to the execution of the Loan, the COVID 19 Pandemic was declared, which negatively impacted the entire world, the United States of America, the City of New Haven and this project. Throughout the COVID 19 Pandemic, Hill faithfully and consistently worked for the Debtors to complete the projects along with other unrelated ventures. Over time the other projects and ventures have created and will create funds that can be used for the completion of the work required for the Debtors.

# III

## <u>THE CHAPTER 11 CASE</u>

### A.  BANKRUPTCY PROCEEDING

The Debtors commenced the current Chapter 11 proceedings by the filing of voluntary petitions in the United States Bankruptcy Court for the District of Connecticut on June 26, 2023 (the "Petition Date"). The cases were assigned to Bankruptcy Judge Ann M. Nevins sitting in the New Haven Division. The Debtors requested authority to retain Attorney Neil Crane and his firm Law Offices of Neil Crane, LLC, of Hamden, Connecticut, as Debtors' general Chapter 11 counsel. The Debtors' applications and counsel's statement filed herein pursuant to Rule 2016 of the Federal Rules of Bankruptcy

8

Procedure (the "Rules") disclosed that the funds for counsel's retention were provided by the Debtors. The Court entered an Order authorizing the retention on September 11, 2023 (Doc 52).

On July 27, 2023, the Court granted the Debtors' application, and ruled these cases are jointly administered. Debtors, through their Member, have considered and investigated various possible resolutions of the Stormfield Loan, including sale, condominium development and sales, refinancing separately and together, refinancing in combination with non-debtor real estate, and a pledge by the Debtors' Member that would permit the Debtors to complete the required rehabilitation and competition of the work required to have the properties become income producing in stages. The Debtors are continuing to pursue those options.

At the time the case was filed, the Court set the deadline for filing Proofs of Claims as September 25, 2023.

The treatment set forth in this Disclosure Statement and Plan, on information and belief, will provide sufficient funds to pay all obligations under the Plan in full or as may be agreed between the Debtors and certain of the parties in interest including their counsel. Even as this Statement is drafted, Debtors have no information on the payoff balance owed to Southport on the Southport Note, other than that filed in the foreclosure action. Therefore, the funding requirements have been estimated.

On December 6, 2023, Stormfield filed a *Motion of Stormfield Capital Funding I, LLC for Relief From the Automatic Stay Pursuant to 11 U.S.C. §362(d)*. (Doc 68). On December 20, 2023, the Debtors filed an *Objection to Motion of Stormfield Capital Funding I, LLC for Relief From the Automatic Stay Pursuant to 11 U.S.C. §362(d)* (Doc 71). On January 2, 2024,

a *Reply of Stormfield Capital Funding I, LLC in Further Support of Motion for Relief From the Automatic Stay Pursuant to 11 U.S.C. §362(d)* (Doc 76). The Debtors and Stormfield appeared before the Court and there is presently an *Amended Scheduling Order for Evidentiary Hearing* (Doc 85) that provides for certain discovery deadlines and a trial commencing on March 5, 2024

## IV

## FINANCIAL INFORMATION RESPECTING THE DEBTORS, ALTERNATIVES TO THE PLAN, FEASIBILITY AND MEANS OF EFFECTING THE PLAN

### A.    FINANCIAL INFORMATION RESPECTING THE DEBTORS

The assets of this estate consist of 201 and 235 Winchester Avenue, New Haven, which is located in the Science Park area of the city. The Properties are not currently rented and need a substantial amount of work to get them into a habitable state, which Hill is pledging to do as detailed in the treatment of Stormfield in Class 2.

Stormfield filed an appraisal in the foreclosure action valuing the properties having a combined value of $640,000.00 with a value of $540,000.00 being attributable to 201 and $100,000.00 being attributable to 235. The Debtors dispute this value. In fact, the loan from Harrison was based upon appraisals, dated January 24, 2020, that Harrison obtained directly from the appraiser, which provided three different values for 201 as is, stabilized and when completed with 12 rental units as follows:

| Appraisal Premise | Date of Value | Value Conclusion |
|---|---|---|
| Market Value As-IS | January 6, 2020 | $2,750,000.00 |
| Perspective Market Value Upon Completion | August 1, 2020 | $3,350,000.00 |
| Prospective Market Value upon Stabilization | February 1, 2021 | $3,400,000.00 |

The loan from Harrison was based upon appraisals, dated January 24, 2020, that Harrison obtained directly from the appraiser, which provided three different values for 235 as if and when completed with 18 rental units as follows:

| Appraisal Premise | Date of Value | Value Conclusion |
|---|---|---|
| Market Value As-IS | January 6, 2020 | $1,150,000.00 |
| Perspective Market Value Upon Completion | August 1, 2021 | $4,100,000.00 |
| Prospective Market Value upon Stabilization | February 1, 2022 | $4,200,000.00 |

A portion of the appraisal for 201 Winchester that provides the valuation is attached hereto as Exhibit C and the portion of the appraisal of 235 Winchester that provides the valuation is attached hereto as Exhibit D.[3]

Debtors' principal, who has substantial experience in the residential rental real estate market in the City of New Haven, including the Science Park neighborhood, believes that the appraisals from the foreclosure case could be appropriate as liquidation valuations as is for 201 and 235 in their present conditions. Hill has paid for appraisals of the property that have not yet been received, from the same appraiser with the same criteria as outlined above and used by Harrison to approve the Loan.

If the Properties were sold today in their current condition, the amount realized from such a sale, after an estimated ten percent (10%) cost of sale deduction, only the senior position real property tax, and water and sewer charges would be paid in full. The Stormfield Note would receive only partial payment, with nothing remaining for the other claims.

_____

[3] The complete appraisals are available upon request of any party and have not been included due to the voluminous nature of the complete appraisals.

**B.**     **ALTERNATIVES TO THE PLAN**

An explanation as to the effect of liquidation of the Debtors' assets are later discussed in Paragraph "D" of Section V of this Disclosure.

The Plan is based upon the Debtors' belief and determination that the estimated liquidation value of their assets as presently constituted would yield no dividend to any unsecured creditors.

The Debtors' Plan of Reorganization classifies the Creditor claims as follows:

| | |
|---|---|
| Class 1 | Secured Claim - City of New Haven Real Estate Taxes |
| Class 2 | Secured Claim – Stormfield Capital Funding 1, LLC |
| Class 3 | Unsecured Nonpriority Claim |
| Class 4 | Unsecured Nonpriority Claim - Insiders |

The Debtors will continue in possession of the Properties and propose to fund payment of the Plan with money earned from the operation of their businesses, all as more fully set forth in the Disclosure Statement and Plan.  Class 4, Equity Class, composed of one individual, will retain its equity interest in exchange for substantial contributions toward the Plan.

**C.**     **FEASIBILITY AND MEANS FOR EFFECTING THE PLAN**

The Debtors shall close on a refinance or sale of the Property netting, after set asides, broker's fees, closing costs, any applicable points, and fees, after normal adjustments, an amount satisfactory to fund the Plan, within twelve (12) months after the completion of Phase 2 along with contributions from Hill

The area has seen a resurgence over the past several years, due to substantial investments in the area by major private developers, the City of New Haven and Yale University and its affiliates. The properties do not currently generate a cash flow and all of the operating expenses are paid for the Debtors' principal Kenneth Hill. Hill is committed to completing the rehabilitation and building of 201 and 235 in stages with a substantial

12

contribution to the Debtors for the completion of the project in three stages. The first and second stage are for work at 201 Winchester Avenue. The completion of this stage would provide for a total of 12 rental units. The first stage would provide for the completion of 6 of the 12 rental units. These proposed stages of completion and occupancy have been approved by the City of New Haven. In fact, upon information and belief, based upon prior practices in the City of New Haven, the City has allowed occupancy of one unit at a time in each phase of the project, once a unit is complete and the fire suppression system is in operation for the building.

At this time the Property does not generate any income and any expenses are paid by Hill directly from his own funds. The funds provided by Hill as set forth under Class 2 will allow for the completion of Phase 1 and Phase 2.

The details of the funding of the completion of 201 is set forth in detail under Class 2 and the treatment of Stormfield.

The property at 201 has two separate entrances, with 6 units being accessed from one entrance on Tilton Street (Phase 1) and 6 units accessed from a separate entrance on Winchester Avenue (Phase 2). The number of bedrooms, bathrooms and anticipated monthly rental stream of $13,600.00 that would be generated from the competition of Phase 1 can be summarized as follows:

201 Winchester Avenue, New Haven, CT

Phase 1 - Anticipated Rental Rates

|  | Bedrooms | Bathrooms | Anticipated Rental Rate |
|---|---|---|---|
| 1 | 1 | 1 | $1,800.00 |
| 2 | 1 | 1 | $1,800.00 |
| 3 | 2 | 2 | $2,500.00 |
| 4 | 2 | 2 | $2,500.00 |
| 5 | 2 | 2 | $2,500.00 |
| 6 | 2 | 2 | $2,500.00 |
| Total Anticipated Monthly Rental Income |  |  | $13,600.00 |

The rental income from Phase 1 along with the substantial contributions from Hill and through the approved utilization of the Undertaking, Hill would be able to complete Phase 2 of 201.

Phase 2 of 201 is anticipated to generate a rental stream is estimated to be $15,200.00 that would be generated from the completition of Phase 2 can be summarized as follows:

201 Winchester Avenue, New Haven, CT

Phase 2 - Anticipated Rental Rates

|  | Bedrooms | Bathrooms | Anticipated Rental Rate |
|---|---|---|---|
| 1 | 1 | 1 | $1,800.00 |
| 2 | 1 | 1 | $1,800.00 |
| 3 | 3 | 2 | $2,900.00 |
| 4 | 3 | 2 | $2,900.00 |
| 5 | 3 | 2 | $2,900.00 |
| 6 | 3 | 2 | $2,900.00 |
| Total Anticipated Monthly Rental Income |  |  | $15,200.00 |

.    When the income from Phase 1 and Phase 2 are combined for 201, total monthly income stream of $28,800.00.

The Debtor has provided an estimated cost to complete Phase 1 and Phase 2 on 201, to Harrison and Stormfield that provided an estimated amount as of January 11, 2020, in the total amount of $480,046.55.The Debtors have obtained proposals from contractors and suppliers to complete the renovations at 201, which as of this date are estimated to be $690,552.98 to complete Phase 1 and Phase 2, $631,208.85 of which is detailed as follows:[4]

| Contractor Type | Contractor Name | Proposal Amount |
|---|---|---|
| Appliances | PC Richards | $39,240.00 |
| Tile | Walter Hurley Tile & Marble, LLC | $45,090.00 |
| Plumbing | | $90,000.00 |
| Electrical | | $100,000.00 |
| HVAC | | $48,800.00 |
| Fire Suppression | | $17,378.85 |
| Watermain and Connection and Hook Up | | $7,500.00 |
| Electrical Fixtures | | $7,200.00 |
| Plumbing Fixtures | | $11,000.00 |
| Cabinetry | | $85,000.00 |
| Construction | | $180,000.00 |
| | | |
| Total Estimated Completion Costs | | $631,208.85 |

The completion of Phase 1 and Phase 2 is dependent upon third party contractors and inspection by multiple governmental agencies in the City of New Haven. The Debtors estimate that the first unit in Phase 1 would be ready for occupancy within approximately seven (7)

---

[4] The Debtors have provided copies of the estimated proposals to Stormfield for the Appliances and the Tile. As of the date of this submission the remaining proposals have not been received in written form from the third-party contractors. The proposals that have been received and that are anticipated will be provided to Stormfield and they are available upon request from Debtors' counsel.

months, with all Phase 1 anticipated completion within nine (9) after the effective date of the Plan.

The Debtors estimate that the first unit in Phase 2 would be ready for occupancy within approximately thirty (30) days of the completion of Phase 1.

The Plan Administrator shall be Kenneth Hill. The completion of 201 is dependent upon the substantial contribution from Hill, as detailed under Class 3, for the Debtors shall be paid by Hill. Once Phase 1 is completed and rental income is received by the Debtors, the net amount of funds available on a monthly basis will first be used to cover the operating expenses of the building which will include but not be limited to real estate taxes, utility expenses, maintenance and repairs, income taxes and then to the completion of Phase 2. Once Phase 2 is completed, and rental income is received by the Debtors, the net amount of funds available on a monthly basis will first be used to cover the operating expenses of the building which will include but not be limited to real estate taxes, utility expenses, maintenance and repairs, income taxes and then to the completion of Phase 2.

After the completion of Phase 2, the Debtors and Hill will seek to refinance or sell 201 within 12 months of its completion. Should the Debtors or Hill failed to fulfill these obligations, then the Debtors and Hill consent to the entry of Relief From the Automatic Stay or any other Stay provided by the Bankruptcy so that Stormfield could return to the Superior Court to establish a Law Day 90 days following the entry of a Judgment of Strict Foreclosure.

The Debtors, through Hill shall assume and shall pay their normal operating costs and business expenses, whether pending at confirmation or arising thereafter, as and when due. The Reorganized Debtors will pay their post-confirmation legal fees and costs when billed without the necessity of further Court authority, either from normal operations or

contributions by their sole member. If the Reorganized Debtors fail to close on a refinance in a net amount satisfactory, and/or with any other funds then available to Debtors to fund the Plan within the time allotted, any applicable stay of creditors shall expire and the creditors shall be free to exercise any state law remedies as are available to them. The net amount of the refinance means the amount left over after the normal and customary costs of such arrangements, including but not limited to broker's commissions, attorney fees and normal costs and adjustments associated with such a transaction are paid at closing.

Secured Creditors whose claims are fully paid shall provide to the closing attorney at said claimant's expense, a recordable original executed release.

If all of the applicable requirements of Bankruptcy Code §1129(a), other than §1129(a)(8) thereof, are met with respect to the Plan, the Debtors request that the Bankruptcy Court, pursuant to §1129(b), confirm the Plan notwithstanding the requirements of §1129(a)(8) if the Plan does not discriminate unfairly and is fair and equitable with respect to each rejecting class.

The Reorganized Debtors may file an application to the Court for entry of a final decree at any time after substantial consummation.

The Post-Confirmation Manager of the Debtors, who also serves as Plan Administrator, shall be their Member, Kenneth Hill.

The Debtors propose to fund payment of the Plan with a refinance or sale of 201, ordinary business income and contribution from the Debtors' principal. This amount is sufficient to provide revenue to support a successful Plan of Reorganization as well as afford the Debtors the ability to pay all other current expenses as they may become due. In the event of unexpected monthly

expenses owed by the Debtors, the principal of the Debtors will provide the funds necessary to cover the expenses. The Debtors propose to make payments on all allowed claims over a two-year period in accordance with the provisions of the Plan. The Debtors have performed an analysis of their business operations and have formulated financial projections.

Feasibility of the Plan is based on a successful refinance or sale within twelve (12) months of the completion of Phase 2. Debtors are reasonably certain that the proposed refinance is probable and therefore believe feasibility is highly likely.

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non- accepting classes are treated in the manner prescribed by §1129(b) of the Code. A Plan that binds no accepting classes is commonly referred to as a "cram down" Plan. The Code allows the Plan to bind no accepting classes of claims or equity interests if it meets all the requirements for consensual conformation except the voting requirements of §l129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

You should consult your own attorney if a "cram down" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.

V

<u>**SUMMARY OF THE PLAN OF REORGANIZATION**</u>

CREDITORS ARE ADVISED TO REVIEW THE PLAN IN ITS ENTIRETY FOR DETAILED DESCRIPTION OF THE PROPOSED TREATMENT OF THE VARIOUS CLASSES IN THE PLAN.  CREDITORS ARE FURTHER URGED TO CONSULT WITH THEIR RESPECTIVE LEGAL COUNSEL AND OTHER PROFESSIONAL ADVISORS CONCERNING THE PLAN, SINCE THE PLAN REPRESENTS A LEGALLY BINDING OBLIGATION AS TO THE DEBTORS AND ALL OTHER AFFECTED PROPERTIES AND CANNOT BE PROPERLY EVALUATED WITHOUT THOROUGH REVIEW AND COMPREHENSION.

**A.**    <u>**ADMINISTRATIVE CLAIMS**</u>

The costs and expenses of administration of the Chapter 11 Case allowed under §507(a)(2) of the Bankruptcy Code are to be paid in full upon confirmation, or as proposed in the attached Plan of Reorganization, or as agreed between the Debtors and the parties holding such claims.  Included herein are claims incurred in the Chapter 11 Case by the Debtors.  Many of these items are on open credit terms and will be paid in accordance with ordinary terms.  The fees required to be paid to the United States Trustee, shall be paid in full on the confirmation of the Debtors' Plan of Reorganization.

Included in Administrative Expenses are the fees and expenses of Law Offices of Neil Crane, LLC, retained by the Debtors.  The fees and expenses will be paid on the effective date or as soon thereafter as they are approved by the Bankruptcy Court.  The funds and terms to pay fees and expenses to the Law Offices of Neil Crane, LLC will be available from the Debtors' business operations or their Member, as will be agreed upon between the Debtors and Law Offices of Neil Crane, LLC prior to confirmation. This estimated total amount is approximately $65,000.00.

19

There is an outstanding amount due to the City of New Haven for Post-Petition Real Estate Taxes. The outstanding Real Estate Tax Obligation would be paid within sixty (60) days of the Effective Date of the Plan.

In accordance with §1129(a)(12) of the Bankruptcy Code and 28 U.S.C. §1930, all quarterly fees payable to the United States Trustee shall be paid by the Debtors in full on or before their respective due dates and shall continue to be assessed and paid, and the Debtors shall file operating reports until such time as a final decree closing, or an order converting or dismissing this case is entered by the Court.

Since services may be required after confirmation of the Plan, and since the actual fees paid for professional services are determined by the Bankruptcy Court, the amount estimated for administrative claims is based on estimates only and is subject to increase or decrease.

**B.** **CLASSIFICATION OF CLAIMS AND EQUITY INTEREST**

The following table summarizes the classifications established under the Plan, indicating the approximate number of claims of that class, whether the status of that class is impaired or unimpaired by the Plan, and the treatment of the claims of that class. All payments required to be paid to the following classes, shall commence within 60 days after the Effective Date of the Plan.[5]

**SECURED CLAIMS**

1. **Class 1**

   1. Class 1 – Allowed Secured Claim – City of New Haven Real Property Taxes

   2. Amount Owed - $31,955.91

   3. Not Impaired

---

[5] The Effective Date of the Plan shall be after the Chapter 11 Plan is approved by the Court after the passage of all applicable appeal periods. For purposes of the Disclosure Statement and Plan the estimated Effective Date of the Plan is November 1, 2019.

4.   Treatment - This is the Claim of City of New Haven for unpaid Real Property Taxes on 201 and 235. The total amount due on 201is $30,918.72 and the total amount due on 235 is $11,037.19, for a combined grand total due of $31,955.91. The total amount due of $31,955.91 shall be paid in full within sixty (60) days of the Effective Date of the Plan with all applicable interest.

2.   **Class 2**

a.   Class 2 - Stormfield Capital Funding 1, LLC

b.   Amount Owed - $4,295,218.87

c.   Impaired

1.   Treatment – The Debtors propose to pay this claim in full over time or at a discounted rate should the Debtors meet or exceed certain time limits as set forth herein. The proposal to satisfy the obligation owed to Stormfield is as follows.

i.   Hill has placed $200,000.00 in an account that is pledged to the competition of Phase 1 and Phase 2. The Debtors and Stormfield will enter into an agreement that the $200,000.00 will be considered as a Security Deposit and converted to a new Construciton Escrow with terms and conditions agreed upon between the parties upon the completion of Phase 1. Phase 1 would be considered complete through documentation provided by Hill consisting of Mechanic Lien Waivers from all contractors, paid receipts for materials, a Certificate of Occupancy for each of the units in Phase 1, and an inspection by Stormfield or its representative at Stormfield's discretion.

ii.   Upon completion of Phase 1 the $200,000.00 will be converted from a Security Deposit to a new Construction Escrow to complete Phase 2, with the terms and conditions of the new Construction Escrow to be agreed upon between the Debtors

and Stromfield.

iii. The funds that currently exist in the original Escrow that are estimated to be approximately $293,000.00, shall remain in the Construction Escrow and shall be disbursed as follows:

1. Upon the competition of Phase 1 $100,000.00 from the original Escrow shall be disbursed and added to the new Construction Escrow to fund the completion of Phase 2 with the balance of Escrow to be held as security for the completion of Phase 2.

2. Upon the completion of Phase 2, the balance remaining in the original Escrow shall be released to Hill as reimbursement for construction advances outlined above.

iv. After the completion of Phase 1, Stormfield will recalculate the amount due with interest at the rate set in the Loan from the Loan's original maturity date without default interest.

v. Thirty days after the completion of Phase 1, the Debtors and/or Hill will resume making monthly payments at the newly calculated loan amount.

vi. The Debtors and Hill will seek to refinance or sell the 201 within 12 months of its completion of Phase 2.

vii. Should the Debtors or Hill fail to fulfil these obligations, then the Debtors and Hill consent to the entry of Relief From any Stay provided by the Bankruptcy so that Stormfield could return to the Superior Court to establish a Law Day 90 days following the entry of a Judgment of Strict Foreclosure.

viii. The Debtors and Hill shall have the right to purchase the Loan from Stormfield for a lump sum payment of $2,500,000.00, at any point during

the term of the treatment outlined above.

**UNSECURED NONPRIORITY CLAIMS**

Unsecured Creditors are provided for in Class 5 with total allowed claims of $16,000.00

and is comprised of only one creditor.

1. **Class 3**

   a. **Class 3 – Unsecured Nonpriority Claims** – Southern Connecticut Gas Company,

   b. Amount Owed $4,674.65

   c. Not Impaired

   d. Treatment:      This class includes the submitted claims of the Southern Connecticut

      Gas Company for services provided at 201 and 235. Payments for this class shall

      total $4,061.71, comprised of $612.94 for service at 201 and $4,061.71 for service at

      235. Payment shall be made in a lump sum within sixty (60) days of the completion

      of  Phase 2.

2. **Class 4**

   a. **Class 4 – Equity Class**

   b. Treatment:      This class consists of the one holder of equity interest in the Debtors,

      Kenneth Hill, as set forth in the Debtors' Operating Agreement and other company

      records as of the date of filing. The Equity Holder shall retain his interest in the

      Debtors in exchange for the substantial contributions regarding the deferrals set forth

      in this Disclosure Statement and Plan. Hill has paid all the attorney fees and costs for

      the filing of these Chapter 11 proceedings and all Chapter 11 fees to the United

      States Trustee. He has agreed to perform the obligations set forth in Class 4 of the

      Plan. In addition, Kenneth Hill agrees to provide the funds detailed previously in the

Disclosure Statement for the completion of Phase 1 and Phase 2.

The reorganized Debtors reserve the right to accelerate any and all post-Effective Date payments pursuant to the proposed Plan without modifying any other obligation hereunder.

THE FOREGOING IS A SUMMARY DESCRIPTION OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES. CREDITORS ARE URGED TO READ THE PLAN IN FULL. CREDITORS ARE FURTHER URGED TO CONSULT WITH COUNSEL, OR WITH EACH OTHER, IN ORDER TO FULLY UNDERSTAND THE PLAN. THE PLAN IS COMPLEX IN THAT IT PRESENTS  A PROPOSED LEGALLY BINDING AGREEMENT BY THE DEBTORS AND AN INTELLIGENT JUDGMENT CONCERNING THE PLAN CANNOT BE MADE WITHOUT UNDERSTANDING IT.

## C.    **IMPAIRMENT OF CLAIMS AND INTEREST**

Pursuant to the Bankruptcy Code, a class of claims or interest is deemed "impaired" by a Plan of Reorganization unless, in general, the rights of the holders of the claims or interest of such class are not altered or, with respect to a claim, the holder receives on the effective day of the Plan cash equal to the allowed amount of the claim and, with respect to an interest, the holder will receive cash equal to the greater of (i) any liquidation preference or (ii) the redemption price, if either is applicable.  Any class that is deemed impaired has an opportunity to vote on the Plan and must accept the Plan by the requisite majority before the Plan can be confirmed.

The requisite votes for acceptance by class of claims is at least **two-thirds in dollar amount and more than one-half in number** of the **allowed claims** as defined pursuant to 11 U.S.C. §502, that are voted.

**There are claims impaired under the Plan and no class can vote**.

D.   **ALTERNATIVE TO THE PLAN – LIQUIDATION ANALYSIS**

A Plan cannot be confirmed under the provisions of 11 U.S.C. §1129 unless it is in the "best interest" of creditors and equity holders. The "best interest" requirement is met if the Plan provides that each member of an "impaired class" recover, through the Plan, no less than that member would receive in a hypothetical Chapter 7 liquidation.

In the event of a liquidation of the Debtors' assets, the proceeds generated through the liquidation would be expended by the Trustee in the following order: (1) for the Trustee's fees and expenses, and other administrative expenses, including, if existing, any claim of post-petition employed professionals, including attorney's fees or accounting fees, if such fees are approved by the Court and gap claims pursuant to 11 U.S.C. Section 507, which may exist by virtue of expenses incurred between the order of conversion and the date of distribution under Chapter 7 and (2) thence to pay off priority claims in full such as, if any, taxes, priority wage claims, and (3) if any money is left, it would be distributed on an pro rata basis to unsecured creditors. (For an analysis of distribution of funds available you are respectfully referred to **Exhibit E**, the Estimated Liquidation Analysis.)

Though some funds for distribution to unsecured creditors might be generated by a liquidation of the Debtors' assets, those funds would assuredly be substantially less than the amounts proposed to be paid to these same creditors under the Debtors' Plan, and therefore liquidation is not in their best interest.

E.   **EXECUTORY CONTRACTS AND LEASES**

The Debtors will assume each tenant's lease under the Plan. Assumption means that the Debtors elect to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. The Debtors

believe that no such default on landlord's part exists. Others, if any, are rejected.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

There are no other executory contracts and unexpired leases other than those with tenants.

*The Deadline for Filing a Proof of Claim on a Claim Arising from the Rejection of a Lease or Contract shall be thirty days after the Confirmation Date.* Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

## G.     ANALYSIS OF PREFERENCES AND FRAUDULENT CONVEYANCES

An analysis of preferences and/or fraudulent conveyances has been performed by Debtors' counsel, who have determined that there are no cases to be brought for preferences or fraudulent conveyances.

## H.     TAX IMPLICATIONS

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should consult with Their Own Accountants, Attorneys, And/Or Advisors.* The Debtors have no opinion of tax counsel or accounting professional, and no rulings of any federal, state, or local taxing authority has been or will be requested in connection with this Plan.

Implementation of the contemplated Plan also may result in federal and state tax consequences to creditors and equity holders. The tax consequences may vary

depending on the particular circumstances or facts regarding the claim and claimant or equity holder. Consequently, creditors and holders of equity securities are urged to consult with their own tax professionals in order to determine the tax implications of the Plan under applicable law.

## I.   MODIFICATION OF THE PLAN

The Debtors may propose amendments or modifications of the Plan at any time prior to Confirmation with leave of the Court. After Confirmation, the Debtors, with approval of the Court, and so long as it does not materially or adversely affect the interests of creditors, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order in such a manner as may be necessary to carry out the purposes and effect of this Plan. The foregoing provisions of this paragraph do not limit the ability of any party to file a motion to modify the Plan under 11 U.S.C. §1127 and applicable rules.  If a modification of the Plan is sought after the entry of the Confirmation Order and the entry of the Final Decree, a Motion to Reopen the case for the purpose of filing and prosecuting a motion to modify the Plan shall also be filed with the Court.

## J.   DISCHARGE

The Debtor shall not receive a discharge upon the Effective Date of the Plan in accordance with 11 U.S.C. §1141. Confirmation of the Plan will constitute the full settlement and release of all claims against MBLA and MBMB, except for the payments set forth in the Plan.  The Bankruptcy Court will continue to retain jurisdiction after confirmation only to resolve outstanding matters in the Chapter 11 Case, such as objections to claims, and with respect to compelling fulfillment, if necessary, of any terms of the Plan.  Upon the Effective Date of the Plan, all property shall vest in the Debtor and will continue to be property of the estate until all distributions under the Confirmed Plan have been completed. In accordance with 11 U.S.C. §1141(c) the Property addressed and dealt

with in the Plan shall become free and clear of all Liens, Claims, encumbrances, and interest of Creditors, including the right of setoff, except as otherwise provided for in the Plan and/or the Confirmation Order.

## V.

## CONCLUSION

For all of the foregoing reasons and for the information contained herein, the Debtors request that you vote to accept the Plan of Reorganization. The deadline for filing votes to accept or reject the Plan of Reorganization is contained in the Court's Order Scheduling a Hearing on Confirmation which is enclosed herewith. Please complete your ballots promptly and return same to: Law Offices of Neil Crane, LLC, 2679 Whitney Avenue, Hamden, CT 06518

MBLA, LLC

Dated: 1/26/2024                    BY: __/s Kenneth Hill_____
                                                 Kenneth Hill, Member Manager
                                                 Duly Authorized

MBMB, LLC

Dated: 1/26/2024                 BY:__/s Kenneth Hill_____
                                                 Kenneth Hill, Member Manager
                                                 Duly Authorized


LAW OFFICE S OF NEIL CRANE, LLC


Dated: 1/26/2024                    BY: __/s/ Stuart Caplan_____
                                                 Stuart Caplan, Esquire (CT 12643)
                                                 Law Offices of Neil Crane, LLC
                                                 2679 Whitney Avenue
                                                 Hamden, Connecticut  06518
                                                 (203) 230-2233
                                                 Email: stuart@neilcranelaw.com